UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| VINAL THOMPSON III, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:24-cv-00360-JCN |
| | ) | |
| KEVIN JOYCE, et al., | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND DEFENDANTS' MOTION TO DISMISS**

Plaintiff alleges that Defendant Joyce (the Cumberland County Sheriff), Defendant Gailey (the Cumberland County Manager), and Cumberland County violated his constitutional rights in connection with an incident that occurred during his employment as a corrections officer at the Cumberland County Jail. (Complaint, ECF No. 1.)

In response to Plaintiff's complaint, Defendants moved for dismissal. (Motion to Dismiss, ECF No. 8.) Plaintiff subsequently filed a motion seeking leave to amend the complaint. (Motion to Amend, ECF No. 13.)

Following a review of the record and after consideration of the parties' arguments, the Court denies Plaintiff's motion to amend his complaint and grants Defendants' motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff became a certified Cumberland County Jail Corrections Officer in 2007. (Proposed Amended Complaint ¶ 2, ECF No. 13-1.)  On July 7, 2020, Plaintiff was working as the Pod Officer in the C-1 Housing Unit, and John Katula was a pre-trial detainee in the C-1 unit.  (*Id.* ¶¶ 19,  20.)  When Mr. Katula was "unable" to provide a required urine sample as requested by Plaintiff's supervisor, a verbal exchange ensued between Mr. Katula and Plaintiff.  (*Id.* ¶¶ 22–23.)  As a result of the interaction, Plaintiff decided to move Mr. Katula to segregation.  (*Id.* ¶ 23.)

According to Plaintiff, as he removed his handcuffs from his belt, he approached Mr. Katula and "reached out with his left hand to turn Katula around so that he could handcuff him."  (*Id.* ¶¶ 24, 25.)  Plaintiff alleges that as he attempted to handcuff Mr. Katula, Mr. Katula immediately assaulted him.  (*Id.* ¶ 26.)  Plaintiff maintains that Mr. Katula continued to resist attempts to handcuff him despite Plaintiff's supervisor ordering him to stop resisting and to comply.  (*Id.* ¶¶ 28–29.)

Plaintiff alleges that "per his training, [he] employed a series of prescribed strikes on Katula to get him to stop assaulting him and to submit to being handcuffed."  (*Id.* ¶ 30.) Plaintiff asserts that Mr. Katula resisted until Plaintiff wrestled him to the ground and, with

---

[1] The facts are derived from the proposed amended complaint, which primarily supplements the allegations related to Plaintiff's substantive due process claim contained in the original complaint.  Defendants oppose the motion to amend on futility grounds.  The Court must "assess whether [the] proposed amended complaint withstands a Rule 12(b)(6) motion (and thus whether leave to amend [is] futile)" and therefore accepts the first amended complaint as true, drawing all reasonable interferences in Plaintiff's favor.  *Efron v. UBS Fin. Servs. of P.R.*, 96 F.4th 430, 437 (1st Cir. 2024).  The Court's analysis of whether Plaintiff has alleged an actionable federal claim applies to Plaintiff's motion to amend and Defendants' motion to dismiss.

the help of other corrections officers, handcuffed him.  (*Id.* ¶¶ 31, 32.)  Plaintiff and Mr. Katula sustained injuries in the altercation.  (*Id.* ¶ 33.)  The altercation was recorded from three different angles.  (*Id.* ¶ 34.)  The Cumberland County Jail administratively charged Mr. Katula with an assault on a corrections officer and subsequently determined that he committed the assault.  (*Id.* ¶ 52.)  Defendant Joyce did not seek to initiate criminal charges against Mr. Katula.  (*Id.*)

On July 8, 2020, the day following the altercation, Defendant Joyce placed Plaintiff on administrative leave.  (*Id.* ¶¶ 3, 35.)  Defendant Joyce also issued a press release in which, according to Plaintiff, Defendant Joyce "deliberately and intentionally misrepresented what had happened on July 7, 2020."[2]  (*Id.* ¶ 36.)  Following the incident, Defendant Joyce requested a criminal investigation by the Portland Police Department and ordered an internal affairs investigation of Plaintiff's conduct.  (*Id.* ¶ 39.)  Plaintiff alleges Defendant Joyce referred to the video recording of the incident in the press release and in a statement to a local newspaper.  (*Id.* ¶¶ 39–40; Exhibit A; Exhibit B, ECF No. 13-2.)  Plaintiff maintains that Defendant Joyce's actions and statements were motivated by a desire to demonstrate that he "was tough on the use of excessive force" given the "social climate" that existed at the time.[3]  (*Id.* ¶ 41.)

---

[2] According to Plaintiff, the press release stated: "As . . . Officer Thompson reached out to grab the inmate, the inmate started to back up and held his hands up as if to refuse to be handcuffed.  Officer Thompson immediately began to punch the inmate in the face and they both began to scuffle."  (*Id.* ¶ 37; Exhibit A, ECF No. 13-2.)

[3] Plaintiff alleges that "[t]here was a clear anti-law enforcement sentiment, centered around the excessive use of force by law enforcement, created by the [George] Floyd murder" in May 2020. (*Id.* ¶¶ 15, 17.)

The Portland Police Department investigated the July 7, 2020, incident and in late July submitted an Incident Report to the Cumberland County District Attorney's Office for review; the report "made no conclusions nor suggested any charges." (*Id.* ¶¶ 43–44.) Due to a conflict of interest, the Cumberland County District Attorney's Office transferred the matter to the Androscoggin County District Attorney's Office. (*Id.* ¶ 45.)

In October 2020, Mr. Katula filed a federal civil rights complaint against Plaintiff, Defendant Joyce, and Cumberland County. (*Id.* ¶ 46.) An attorney was assigned to represent Plaintiff in November 2020.[4] (*Id.* ¶ 48.) Plaintiff alleges that none of the attorneys for the defendants in the case conducted discovery or meaningfully challenged the merit of the complaint. (*Id.* ¶ 49.) In December 2020, the parties settled the case, and filed a stipulation of dismissal with the court on January 12, 2021. (*Id.* ¶ 51.)

Plaintiff alleges that in April 2021, the Maine Criminal Justice Academy, at the request of the State of Maine, issued a report stating that it was unable to opine whether Plaintiff's actions constituted an unreasonable use of force by a corrections officer. (*Id.* ¶ 53.) On July 9, 2021, a Cumberland County Grand Jury returned an indictment against Plaintiff charging him with (1) Reckless Conduct with a Dangerous Weapon, (2) Assault, and (3) Reckless Conduct. (*Id.* ¶ 54.)

On July 20, 2021, the Cumberland County Jail Internal Affairs began an investigation into the incident. (*Id.* ¶ 55.) On July 26, 2021, Internal Affairs recommended

---

[4] Plaintiff does not assert in the amended complaint who assigned the attorney. The Court assumes the assignment was made by an entity responsible for the defense and indemnification of the Cumberland County Sheriff's office and its employees.

the termination of Plaintiff's employment. (*Id.* ¶ 56.)   On August 23, 2021, a Pre-Determination Hearing was held at the Cumberland County Jail.  (*Id.* ¶ 57.)   On September 6, 2021, the jail administrator (Major Tim Kortes) issued a written Pre-Determination Hearing decision recommending the termination of Plaintiff's employment. (*Id.* ¶ 58.)   Plaintiff asserts that on September 7, 2021, Defendant Joyce terminated Plaintiff's employment without first obtaining the requisite authority from Cumberland County.  (*Id.* ¶ 59.)  On September 8, 2021, in response to the termination, the National Correctional Employees Union (NCEU) filed a grievance on Plaintiff's behalf.  (*Id.* ¶ 60.)

In October 2021, Plaintiff and the Maine Criminal Justice Academy entered into an Interim Consent Agreement by which Plaintiff voluntarily surrendered his Certificate of Eligibility to work as a corrections officer pending the outcome of his criminal charges. (*Id.* ¶ 61.)  In September 2023, a trial was held on Plaintiff's state criminal charges.  (*Id.* ¶ 62.)  The court, sitting without a jury, acquitted Plaintiff on all three charges alleged in the indictment.  (*Id.* ¶ 63.)  Following the entry of the judgment, the Maine Criminal Justice Academy reinstated Plaintiff's Certificate of Eligibility to serve as a corrections officer. (*Id.* ¶ 64.)

On March 8, 2024, Defendant Gailey held a hearing on Plaintiff's grievance.  (*Id.* ¶ 65.)  Plaintiff alleges that during the hearing, Defendant Gailey admitted that Defendant Joyce had not received the requisite approval before terminating Plaintiff's employment. (*Id.* ¶ 66.)  On May 19, 2024, Defendant Gailey overturned the termination and reinstated Plaintiff to his position as a corrections officer with all rank, seniority, and pay levels restored.  (*Id.* ¶ 67.)  Because Plaintiff disputed the amount of pay and benefits awarded by

the arbitrator, the NCEU appealed from the decision to the Maine Board of Arbitration and Conciliation, which issued a decision favorable to Plaintiff on October 28, 2024.  (*Id.* ¶ 68; Decision and Award, Exhibit E, ECF No. 13-6.)

In this action, Plaintiff asserts due process and equal protection claims based on the proceedings that resulted in the termination of his employment.  Plaintiff seeks to recover compensatory and punitive damages.

## LEGAL STANDARD[5]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  In reviewing a motion to dismiss under Rule 12(b)(6), a court "must evaluate whether the complaint adequately pleads facts that 'state a claim to relief that is plausible on its face.'" *Guilfoile v. Shields*, 913 F.3d 178, 186 (1st Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In doing so, a court "assume[s] the truth of all well-pleaded facts and give[s] the plaintiff the benefit of all reasonable inferences therefrom." *Id.* (quoting *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008)).  The complaint, however, may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard." *Young*, 717 F.3d at 231.  Rule 12(b)(6) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To evaluate the sufficiency of the complaint, therefore, a court must "first, 'isolate and ignore

---

[5] As stated above (*see* footnote 1), because Defendants challenge Plaintiff's motion to amend on futility grounds, the Court's review of Defendants' motion to dismiss and Plaintiff's motion to amend are governed by the same standard.

statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration omitted) (quoting *Zenon v. Guzman*, 924 F.3d 611, 615-16 (1st Cir. 2019)).

## DISCUSSION

### A.    Maine Rule of Civil Procedure 80B

Defendants argue that Plaintiff cannot proceed on his claims because Maine Rule of Civil Procedure 80B provides an adequate and exclusive post-deprivation remedy for Plaintiff's alleged loss. Plaintiff argues that Rule 80B is not the exclusive remedy because he is subject to a Collective Bargaining Agreement between NCEU and Cumberland County.

Under Rule 80B, "[w]hen review by the Superior Court, whether by appeal or otherwise, of any action or failure or refusal to act by a governmental agency, including any department, board, commission, or officer, is provided by statute or is otherwise available by law, proceedings for such review shall . . . be governed by these Rules of Civil Procedure as modified by this rule." M.R. Civ. P. 80B(a). "Rule 80B does not create an independent right to appeal any governmental action to the Superior Court. It provides a procedural avenue for those disputes in which the court has jurisdiction." *Lyons v. Bd. of Dirs. of Sch. Admin. Dist. No. 43*, 503 A.2d 233, 235 (Me. 1986). The Maine Supreme Judicial Court has determined that "when direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate," *Gorham v.*

*Androscoggin Cty.*, 2011 ME 63, ¶ 22, 21 A.3d 115, "or a statute provides otherwise." *Tominksy v. Ogunquit*, 2023 ME 30, ¶ 13, 294 A.3d 142.

Defendants assert that Plaintiff could have filed a Rule 80B complaint in Maine Superior Court following the termination of his employment. Plaintiff contends that as a member of a collective bargaining unit subject to 26 M.R.S. § 965, he was required to file a grievance pursuant to the collective bargaining agreement between the NCEU and Cumberland County. (Plaintiff's Response to Motion to Dismiss at 3, 5.) Defendants argue that "while the [collective bargaining agreement] may provide an alternative avenue to file a grievance, it does not and cannot eliminate the exclusivity of Rule 80B as the only post-deprivation remedy for alleged constitutional violations based on an employment right created by state law." (Defendants' Reply in Support of Motion to Dismiss at 3.)

In support of their argument, Defendants primarily rely on two cases, *Union River Valley* and *Cape Elizabeth School Board*, in which the Law Court discussed the "dual system" under which "an aggrieved teacher can challenge his [or her] dismissal directly by appealing to the Superior Court pursuant to M.R. Civ. P. 80B, or in the alternative, 'the teacher may bypass an 80B appeal and submit the dismissal to binding grievance arbitration when such arbitration is provided by a collective bargaining agreement.'" *Union River Valley Teachers Ass'n v. Lamoine Sch. Comm.*, 2000 ME 57, ¶ 7, 748 A.2d 990 (quoting *Cape Elizabeth Sch. Bd. v. Cape Elizabeth Teachers Ass'n*, 459 A.2d 166, 171 (Me. 1983)). Neither *Union River Valley* nor *Cape Elizabeth School Board*, however, addresses the issue presented in this case—whether a person can, after following the procedure available

8

through a collective bargaining agreement, subsequently seek vindication of the person's constitutional rights in court.

Other authority, including the trial court decision in *Urbanski v. Pelletier*, a case cited by Defendants, could be construed to suggest that Plaintiff may proceed in this action even though he did not seek relief pursuant to Rule 80B. In *Urbanski*, the defendant argued that because the plaintiff did not exhaust the collective bargaining agreement process after he filed a grievance, he lost any legal rights he might have had under state law. *Urbanski v. Pelletier*, No. CV-91-40, 1991 Me. Super. LEXIS 112, at *10 (Me. Super. Ct. June 4, 1991). The court concluded that "[b]ecause the defendant ha[d] failed to show that the grievance procedure under the collective bargaining agreement was exclusive . . . [the plaintiff], for purposes of th[e] motion [to dismiss], [was] not barred from seeking redress through the state legal process." *Id.*

Here, the collective bargaining agreement's grievance procedure provided Plaintiff with an administrative option to challenge the termination of his employment. Plaintiff contends that he could not have filed an 80B appeal while his grievance under the collective bargaining agreement was pending. Because an  appeal must be filed within thirty days after notice of the governmental action, the length of the grievance process could consume the entire 30-day period, which could preclude an 80B appeal. *See* M.R. Civ. P. 80B(b); *Gorham*, 2011 ME 63 ¶ 19, 21 A.3d 115. Plaintiff was also unable to adjudicate his constitutional claims through the grievance process. Because Plaintiff could essentially appeal from his termination through the grievance process on certain grounds but not

9

address his constitutional claims through that process, logic suggests that the 80B proceeding is not the exclusive remedy available to Plaintiff.

More fundamentally, even if Defendants prevailed on their argument that despite a bargained-for grievance process, an 80B proceeding is the exclusive remedy under state law, the state law authority, including the cases cited by Defendants, does not govern most federal constitutional claims presented in federal court. "The general rule is that plaintiffs may bring [federal] constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 194 (2019) (quotation marks omitted). "The Civil Rights Act of 1871, after all, guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials, and the settled rule is that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983." *Id.* at 185 (quotation marks and modifications omitted); *see also Light v. Town of Livermore*, No. 1:21-cv-00266-JAW, 2022 WL 4016809, at *20 (D. Me. Sept. 2, 2022) (noting that "failure to bring claims pursuant to Rule 80B" is generally "not grounds for dismissal" in a federal case).

The general rule is not without exceptions or other concerns, however. Congress has imposed exhaustion requirements for certain plaintiffs and certain kinds of claims, such as prisoners challenging their conditions of confinement. *See* 42 U.S.C. § 1997e. Certain procedural due process claims also require federal courts to examine the availability of state court remedies, as demonstrated in some of the cases Defendants cite. *See Crawford v. City of Westbrook*, No. 2:23-cv-00123-JDL, 2024 WL 1769170, at *4 (D. Me. Apr. 24,

2024); *Farris v. Poore*, 841 F. Supp. 2d 436, 440–41 (D. Me. 2012); *Moreau v. Town of Turner*, 661 A.2d 677, 680 (Me. 1995). After a review of relevant authority and other courts' sound reasoning, the Court concludes that while the existence of relief under Rule 80B does not necessarily preclude Plaintiff from asserting substantive due process or equal protection claims, Plaintiff's related 80B argument—that Rule 80B constitutes an adequate post-deprivation remedy—warrants further discussion in the context of Plaintiff's procedural due process claim.

**B.    Due Process Claims**

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005).

Regarding Plaintiff's substantive due process claim, Defendants argue Plaintiff's allegations do not satisfy the conscience-shocking standard required for such a claim. Plaintiff maintains that he has pled sufficient facts to meet the shock-the-conscience standard. "Where, as here, a plaintiff's substantive due process claim challenges the specific acts of a state [actor], the plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property." *Pagan*, 448 F.3d at 32 (emphasis in original). To shock the conscience,

conduct "must be stunning," "extreme and egregious," or "truly outrageous, uncivilized, and intolerable." *Id.* "Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process." *Id.*; *Ortolano v. City of Nashua*, 680 F. Supp. 3d 70, 80–81 (D.N.H. 2023) (cleaned up) ("[T]he shocks-the-conscience threshold is necessarily a high one, to prevent the Constitution from being demoted to a font of tort law.").

Courts have determined that plaintiffs have established actionable substantive due process claims under the following fact patterns:

> a student blinded in one eye when a coach intentionally struck him in the head with a metal weight; a teacher's fabrication of sexual abuse charges against a father, resulting in loss of contact with his child for three years; rape by a police officer in connection with a car stop; a 57–day unlawful detention in the face of repeated requests for release, police officers aiding a third-party in shooting the plaintiff; an intentional assault by a police officer who struck a pretrial detainee twice in the head and threatened to kill him; and a principal forcing his way into a room where a student was hiding, grabbing her from the floor, throwing her against the wall, and slapping her.

*Cummings v. McIntire*, 271 F.3d 341, 346 (1st Cir. 2001) (citations omitted); *see also Duplisea v. City of Biddeford*, No. 2:22-cv-00317-JAW, 2023 WL 3852399, at *4 (D. Me. June 6, 2023) (collecting cases). "As illustrated by [these] examples, official conduct is more likely to meet the 'conscience-shocking' threshold if it involves highly physical intrusive conduct, use of physical force or violence, or interference with a protected relationship (e.g. a parent-child relationship)." *Spencer v. Doran*, No. 18-cv-1191-LM, 2020 WL 4904826, at *6 (D.N.H. Aug. 20, 2020).

In the public employment context, an at-will employee generally lacks a property right to continued public employment, but if a contract confers an entitlement to continued

employment, such as where an employee can only be removed for cause, a property right under state law can be created which is then afforded procedural due process protection. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Beitzell v. Jeffrey*, 643 F.2d 870, 874 (1st Cir. 1981). Guidance from the Supreme Court does not conclusively resolve, however, whether "the constitutional safeguards accorded under the substantive component of the Due Process Clause embrace all state-created property interests entitled to procedural due process protection." *Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir. 1991); *see also*, *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1979) (noting that contract right to public employment was not "anything resembling" the fundamental rights typically involved in substantive due process cases but analyzing the basis for termination).

While some circuit courts have held that a property right resulting from contractual protection for public employment is insufficiently fundamental and thus cannot serve as the basis of a federal substantive due process claim, *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (collecting cases), other circuit courts, including the First Circuit, have assumed that it can. *Newman v. Massachusetts*, 884 F.2d 19, 25 (1st Cir. 1989); *Morris v. Clifford*, 903 F.2d 574, 577 (8th Cir. 1990). Some other circuits have expressed doubt about recognizing such claims, but they have not conclusively foreclosed the claims. *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007), aff'd. on other grounds, *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008) (suggesting that "substantive due process protects the right to pursue an entire profession, and not the right to pursue a particular job," but not conclusively foreclosing such claims).

13

The Court does not have to resolve the issue in this case. Even if a property interest in a particular public employment position can serve as the basis for a substantive due process claim, Plaintiff has not alleged conduct that satisfies the shock-the-conscience standard. Plaintiff alleges that Defendant Joyce exceeded his authority by failing to obtain pre-authorization from his superiors, but the federal constitution is not implicated by every violation of a state statute, local ordinance, or employment contract. *See Roy v. City of Augusta, Maine*, 712 F.2d 1517, 1523 (1st Cir. 1983) ("even the outright violation of state law by local officials is a matter primarily of concern to the state and does not implicate the Constitution—absent fundamental procedural irregularity, racial animus, or the like") (internal quotation marks omitted); *Farris*, 841 F. Supp. 2d at 441–42 (finding no plausible substantive due process claim when municipal employee alleged that person who fired him "had no authority to make the termination decision and was a biased decisionmaker").

Plaintiff also alleges that Defendant Joyce mischaracterized in a press release what occurred between Plaintiff and Mr. Katula and then terminated Plaintiff's employment to show that he "was tough" on excessive force. (Proposed Amended Complaint ¶ 41.) Accepting the allegations as true, as the Court must at this stage of the proceedings, the allegations do not satisfy the conscience-shocking standard. Plaintiff presents no argument or authority that would support a finding that a rational fact finder could conclude that Defendant Joyce's termination decision was so arbitrary and without factual basis as to shock the conscience when: (1) an internal affairs investigation produced a recommendation of dismissal, (2) an independent district attorney's office for a different county investigated and decided to prosecute Plaintiff for his conduct during the incident,

(3) a grand jury indicted Plaintiff on several charges based on the incident, and (4) the prisoner's civil suit resulted in a monetary settlement for the prisoner. Plaintiff's contention that his acquittal on the criminal charges against him supports his substantive due process claim is unpersuasive. The decision to terminate a person's employment is not unconstitutionally conscience-shocking simply because of an acquittal on related criminal charges. The alleged facts, which include the internal affairs investigation, the district attorney's decision, the grand jury's indictment, and Plaintiff's description of the incident, reveal differing views regarding Plaintiff's conduct during the altercation with Mr. Katula. More is necessary to establish the conscience-shocking standard even if, as Plaintiff alleges, Defendant Joyce was motivated by public perception.

Even without the various indicia of a rational basis for the government action alleged in this case, Plaintiff's allegations are insufficient to support a claim as evident by decisions of other courts in comparable factual circumstances. *See Catinella v. Cnty. of Cook, Illinois*, 881 F.3d 514, 519 (7th Cir. 2018) (finding allegation of "trumped up" policy violation based on old conduct "as a pretext to fire [plaintiff]" to be "unfair" but "far from conscience-shocking"); *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1223 (8th Cir. 2015) (false statements and wrongfully steering internal investigation in a way that led to adverse employment action did not did not rise to the level of shocking the conscience); *Farris*, 841 F. Supp. 2d at 441–42; *Duplisea*, 2023 WL 3852399, at *5 (no substantive due process claim when plaintiff alleged termination was result of "misrepresentations and fabrication of evidence" within a workplace misconduct investigation); *Thomas v. Town of Salisbury*, 134 F. Supp. 3d 633, 647 (D. Mass. 2015) (rejecting claim based on "allegedly unfair

investigation and termination, which was eventually reversed through the prescribed appellate process" because the plaintiff "cited no cases, and none have been found, where such conduct, even if motivated by bad faith, supports a substantive due process violation"); *Chrabaszcz v. Johnston Sch. Comm.*, No. CV 03-133S, 2005 WL 8174458, at *12 (D.R.I. Dec. 27, 2005) ("While a reasonable factfinder could find that Defendants' actions harmed Plaintiff's professional reputation and search for employment, such alleged harm is simply insufficient to rise to the level of a substantive due process violation").

Plaintiff, however, argues that courts have found substantive due process violations when a law enforcement officer deliberately fabricated evidence to prosecute criminally an innocent person. *See Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004). Plaintiff's reliance on such authority in this case is unavailing. Plaintiff does not allege that Defendant Joyce had any authority or involvement in the independent decision to initiate the criminal case against Plaintiff. The evidence in the criminal case evidently focused on the video recording reflecting the interaction between Plaintiff and Mr. Katula and other evidence regarding their interaction. Not insignificantly, Plaintiff does not contend that Defendant Joyce's allegedly false statement was intended to be or was in fact used as evidence against him in the criminal case.

In sum, Plaintiff has failed to state a substantive due process claim against Defendants. Because Plaintiff's proposed amended complaint does not allege an actionable substantive due process claim, the proposed amendment would be futile. *See Boston & Me. Corp. v. Hampton,* 987 F.2d 855, 868 (1st Cir. 1993) ("[I]f the proposed

amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend.").

While Plaintiff's allegations do not support a substantive due process claim, the allegations do implicate Plaintiff's procedural due process rights. The procedural component of the due process guarantee "normally requires notice and an opportunity for some kind of hearing," but "[w]hether the opportunity needs to be furnished before the seizure or whether a post-seizure opportunity is sufficient depends on the circumstances." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (quotation marks omitted). Courts determine which procedural protections are required "according to a sliding scale, balancing a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990).

Federal courts have permitted procedural due process claims based on allegedly inadequate process before an official termination decision of the public employer's authorized decisionmaker, even when there is a state court remedy available to the employee after termination. *See Clukey v. Town of Camden*, 717 F.3d 52, 61 (1st Cir. 2013) ("there is a long history of case law in this circuit holding that public employees who have been deprived of a property interest in employment without due process may bring a § 1983 claim in federal court regardless of the availability of a state law breach-of-contract claim"); *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 266 (1st Cir. 2010)

(considering procedural due process claim after a mayor terminated contracts without a hearing).

To the extent that Plaintiff contends that his procedural due process claim might be based on the lack of an adequate pre-deprivation process, Plaintiff has not alleged an actionable claim because Plaintiff's allegations establish that Plaintiff was provided notice and a hearing before his employment was terminated. Plaintiff has not alleged any fundamental problems with the Pre-Determination Hearing forum provided, such as a sham proceeding where he was denied the opportunity to defend himself or present evidence. *See Chmielinski v. Massachusetts*, 513 F.3d 309, 316 (1st Cir. 2008) ("The standard the defendant must meet here is not high: the U.S. Constitution requires only some pretermination opportunity to respond") (quotation marks omitted).

To the extent that Plaintiff's procedural due process claim is not based on the adequacy of the official pre-deprivation process in Maine, but rather that Defendant Joyce's decision was unauthorized under a state statute, the claim would implicate the Supreme Court's reasoning in *Parratt v. Taylor*, 451 U.S. 527 (1981), *Hudson v. Palmer*, 468 U.S. 517 (1984), and *Zinermon v. Burch*, 494 U.S. 113 (1990). The so-called *Parratt-Hudson* doctrine provides:

> So long as a state has not set up a scheme so open-ended it invites unwarranted uses of summary process, *see Zinermon*, 494 U.S. at 138, and so long as a state provides an adequate after-the-fact remedy for any wrongful summary action, *see Parratt*, 451 U.S. at 543–44, allegations of the kind of "random and unauthorized" mistakes in application that those who work in

government sometimes make are not enough to state a procedural due process claim, *Hudson*, 468 U.S. at 533.

*S. Commons Condo. Ass'n v. Charlie Arment Trucking, Inc.*, 775 F.3d 82, 89 (1st Cir. 2014) (alternate citations omitted).

Plaintiff has not alleged an actionable procedural due process claim based on Defendant Joyce's alleged lack of proper authorization because (1) Plaintiff does not challenge the adequacy of the procedures provided by a state or local policy or rule (Plaintiff instead challenges an alleged error or violation in applying the state and local rules), and (2) Plaintiff does not allege the absence of state remedies for the alleged violation. *See Lambert v. Fiorentini*, 949 F.3d 22, 28 (1st Cir. 2020) ("A procedural due process claim that does not allege the unavailability of constitutionally-adequate remedies under state law fails") (internal quotation marks omitted).

In other words, to the extent that Plaintiff's due process claim is based on Defendant Joyce allegedly exceeding a statutory limit on his authority, Plaintiff's assertion implicitly acknowledges that Defendant Joyce's decision was random and unauthorized under state law. Plaintiff had at least two avenues to challenge the allegedly unauthorized decision— an internal administrative grievance or a state court lawsuit. Because Plaintiff was successful on his internal administrative challenge, he evidently decided not to pursue the available state court remedy. The state court post-deprivation remedy (Rule 80B), however, was available. Under the *Parratt-Hudson* doctrine, therefore, the procedural due process claim fails. Federal courts have consistently declined to entertain such claims because if they did, any party who was dissatisfied with a local or state decision could

assert a federal claim based on any of the "countless" potential mistakes, errors, or violations of state or local laws and regulations. *Herwins*, 163 F.3d at 19. The First Circuit reasoned that "it has seemed sufficient to leave such random and individualized errors to be corrected by state courts and agencies." *Id*.

## C.    Equal Protection Claim

Plaintiff seeks to assert a "class of one" equal protection claim against Defendants. Defendants argue Plaintiff's equal protection claims must be dismissed because the Supreme Court held in *Engquist* that "class of one" equal protection claims do not apply in the public employment context. Plaintiff asserts that because he is not an at-will employee and can only be fired "for cause," his case is distinguishable from *Engquist*.

An individual may assert an equal protection claim "brought by a 'class of one,' where the plaintiff alleges that [he or she] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000). In *Engquist v. Oregon Department of Agriculture*, however, the Supreme Court held that "the class-of-one theory of equal protection has no application in the public employment context." 553 U.S. 591, 607 (2008). Although the Supreme Court discussed the principles of at-will employment in explaining its decision, the Court did not limit its holding to at-will public employees. *See id.* at 606–07. In fact, the Court acknowledged that "Congress and all the States have, for the most part, replaced at-will employment with various statutory schemes protecting public employees from discharge for impermissible reasons . . . But a government's decision to limit the ability of public employers to fire at will is an act of legislative grace,

not constitutional mandate." *Id.* The Court cannot identify, nor does Plaintiff cite, any cases which distinguish between at-will employees and those who may only be fired for cause. *Cf. Leone v. Township of Deptford*, 616 F. Supp. 2d 527, 536 (D.N.J. 2009) ("This 'class-of-one' claim, however, cannot be asserted by a public employee."); *McCann v. City of Lawrence*, 659 F. Supp. 2d 243, 250 (D. Mass. 2009); *Farris*, 841 F. Supp. 2d at 442; *Chizman v. Scarnati*, 218 F. Supp. 3d 175, 181 (E.D.N.Y. 2016). Plaintiff has failed to state an actionable claim under the Equal Protection Clause.

### D.    Supervisory and Municipal Liability

In Count II, Plaintiff asserts "supervisory violations" against Defendant Gailey, and in Count III, Plaintiff claims that the alleged constitutional violations were caused by a custom, policy, or practice of Cumberland County. Because the claims are premised on the underlying conduct of Defendant Joyce, and because the alleged conduct of Defendant Joyce does not establish a constitutional violation, the supervisory and municipal claims necessarily fail. *See Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir. 1997) (claims against superiors necessarily fail when "the required predicate—a constitutional violation by the subordinate—cannot be established").[6]

---

[6] Plaintiff brings his claims under 42 U.S.C. § 1983 and 5 M.R.S. § 4682. Section 4682 is the Maine analogue to § 1983, and the analysis is essentially the same. *See Cohen ex rel. Cohen v. City of Portland*, 110 F.4th 400, 404 (1st Cir. 2024). Therefore, Plaintiff's state law claims fail on the merits for similar reasons. Even if the analysis of the state law claims was not essentially the same, dismissal of the state law claims would still be appropriate because an exercise of supplemental jurisdiction would not be warranted after dismissal of all federal claims.

## CONCLUSION

Based on the foregoing analysis, the Court denies Plaintiff's motion to amend his complaint[7] and grants Defendants' motion to dismiss.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of July, 2025.

---

[7] The proposed amended complaint was primarily designed to address Defendants' challenge to Plaintiff's substantive due process claim. As noted in the discussion of Plaintiff's substantive due process claim, the allegations in the proposed amended complaint are insufficient to support a substantive due process claim. Insofar as the proposed amended complaint did not materially alter the allegations relevant to Plaintiff's other claims, the proposed amended complaint also lacks sufficient factual allegations to support Plaintiff's procedural due process and equal protection claims. The amendment, therefore, would be futile.